UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN A. PARISI,

                      Petitioner,

  -against-                                              1:04-cv-541
                                                                           (LEK)

UNITED STATES OF AMERICA,

                      Respondent.

### MEMORANDUM-DECISION AND ORDER[1]

       This case presents the question whether a criminal defendant, who has signed a written plea agreement establishing his guilt, can now move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, on behalf of himself and his wife.  Petitioner Parisi ("Petitioner" or "Mr. Parisi") argues that his guilty plea should be vacated because it was not voluntary and intelligent, claiming that the government withheld exculpatory evidence at the time of his plea, and that he received the ineffective assistance of trial counsel in violation of his Sixth Amendment rights.  Petitioner alternatively argues that the upward enhancements of his sentence imposed by the trial judge are unconstitutional under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and therefore his sentence should be reduced accordingly.

       The Government contends that Petitioner fails on the merits, and that even were that not the case, Petitioner is barred from raising these issues by failing to raise them on direct appeal; and, further, that he waived his right to raise these issues by pleading guilty in a written plea

---

[1] For printed publication by the Federal Reporters.

agreement.  For the reasons set forth below, Mr. Parisi's petition is denied.

## I.  BACKGROUND[2]

Petitioner owned and operated pornographic websites from his home in Clifton Park, New York.  The websites contained sexually explicit images of several female models.  Petitioner was responsible for the photographing of models that appeared on his websites.  Petitioner offered such sexually explicit images for free on a portion of the website, and also obtained fees for certain sexually explicit images which could only be obtained by individuals who subscribed to said websites.

In August of 1996 and 1997 Petitioner paid three separate females, all under the age of 18, to pose nude in various stages of undress and in sexually explicit poses in his bedroom in Clifton Park, New York.  Petitioner later converted the sexually explicit images of the minors into digital images and placed them on his website.

In February, April, and June of 2000, undercover FBI agents observed advertisements on Petitioner's website stating that a person could join and view "tender, young, REAL, teens".  Thereafter, an FBI agent downloaded sexually explicit images of a minor from Petitioner's website, after paying a subscription fee.  On May 2, 2000, a federal search warrant was executed at Petitioner's residence.  Videotapes, computers, and computer disks containing sexually explicit images of minors were recovered.  After grand jury subpoenas were issued to minors appearing on Petitioner's websites, Petitioner met with these minors and persuaded them to sign false affidavits stating that they were 18 years of age when they posed for Petitioner.  Petitioner, in

---

[2]This statement of facts is taken from the official transcript of proceedings recorded at Petitioner's plea colloquy.  See Gov't Ex. 2 (Dkt. No. 19), at pp. 14-20.

fact, knew these females were minors when he filmed them.

On September 3, 2003, pursuant to a written plea agreement, Petitioner pled guilty to several Counts of producing child pornography, advertising to display or distribute child pornography, and tampering with a witness. On February 10, 2004, Petitioner was sentenced by this Court to a total term of 150 months incarceration. No direct appeal was filed. However, in May of 2004, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Thereafter, Petitioner supplemented this motion, adding a claim adding that his sentence was unconstitutional under the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004).

## II. DISCUSSION

*A. Petition on Behalf of Melodi Parisi*

In his petition to vacate his own conviction and sentence, Petitioner also requests relief on behalf of his wife, Melody Parisi. Pursuant to 28 U.S.C. § 2242 it is possible to make such an application on another's behalf.[3] However, in order to do so, Petitioner has the burden of establishing standing. Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) (Rehnquist, C.J.) ("[b]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.")

To establish such "next friend" standing in a habeas proceeding Petitioner must provide "adequate explanation--such as inaccessibility, mental incompetence, or other disability-- why the real party in interest cannot appear on [his] own behalf to prosecute the action." Id. at 163-

---

[3] "Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242 (2005).

3

164. Further, the petitioner "must be truly dedicated to the best interest of the person on whose behalf he seeks to litigate" and "have some significant relationship with that person." Id.

While this Court does not purport to question Petitioner's dedication to the best interest of his wife, the first prong of his burden is not met. In no part of Petitioner's original motion does he explain or establish why his wife is unable to file her own petition or appear on her own behalf. Furthermore, following this contention in the Government's opposition brief, Petitioner did not address or attempt to explain the omission in his reply to the Government's opposition brief. At this time there is no evidence showing why Melodi Parisi cannot file her own petition, and, therefore, Petitioner has not met his burden of establishing standing. Accordingly, Petitioner's filing on behalf of his wife is dismissed.

### B. Error Cognizable Under A Writ of Habeas Corpus

At the outset it is important to note the high standard of error that must be established by a petitioner to succeed under a writ of habeas corpus. To rise to the level cognizable under a writ of habeas corpus, a trial court's error must be either jurisdictional or constitutional, or amount to "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962) (Stewart, J.). This is the standard by which this Court evaluates Petitioner's claims.

### C. Whether Petitioner Is Procedurally Barred From Asserting A Collateral Attack

The Government contends that absent failing on the merits, Petitioner is barred from asserting his § 2255 claims because he failed to appeal his convictions directly.

Direct appeal is the appropriate first step in normal appellate procedure. Campino v.

United States, 968 F.2d 187, 190 (2d Cir. 1992).  Petitions brought by federal prisoners pursuant to 28 U.S.C. § 2255, without first having exhausted their direct appeal remedy, have been dismissed in this jurisdiction for procedural default absent a defendant's showing of cause for failing to raise the claim on direct appeal and prejudice from the resulting error.  Id. at 189; Billy–Eko v. United States, 8 F.3d 111 (2d Cir. 1993) (dismissing § 2255 petition for procedural default where defendant was represented by new counsel on appeal and ineffective assistance claim was grounded solely in the trial record).  The Supreme Court has held that even in the context of a guilty plea "the voluntariness and intelligence [of the plea] can be attacked on collateral review only if first challenged on direct review."  Bousley v Unites States, 523 U.S. 614, 621 (1998) (Rehnquist, C.J.).  Indeed, this Court has itself rejected habeas petitions under § 2255 when the prisoner fails to raise the issue on direct appeal and is unable to demonstrate cause and prejudice.  Barr v. United States, 152 F.Supp.2d 249, 252 (N.D.N.Y. 2001) (Kahn, D.J.).

However, the Supreme Court has recently abrogated the Second Circuit's decision regarding procedural default in Billy–Eko and now makes exception to this rule holding that all ineffective assistance of counsel claims may be brought in a collateral proceeding under § 2255 regardless of whether the claim could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500 (2003) (Kennedy, J.).  The Court's reasoning for the reversal in Massaro was grounded in their interpretation of the objective which the common law doctrine purports to serve – namely, to conserve judicial resources and to respect the law's interest in the finality of judgments.  Id. at 504.  The Court indicated that the district court was the best initial forum for developing the facts necessary to determine ineffective assistance claims.  Id. at 505.  They reasoned that while the appellate court's analysis is restricted solely to the trial record, which will be devoted to guilt and

innocence issues potentially inconclusive for determining adequacy of representation, the district court will be able to call live witnesses to the stand and take testimony, a more adequate approach for developing the factual predicate for the claim. Id.

Thus, for Petitioner's ineffective assistance of counsel claim, Mr. Parisi may proceed under color of § 2255, and need not show cause and prejudice to avoid dismissal for procedural default. Petitioner, however, faces another hurdle, as discussed below.

*D. Whether Petitioner Waived His Right to Collaterally Attack His Convictions*

The Government also contends that if any portion of Mr. Parisi's claim under § 2255 is not barred for procedural default, it is alternatively barred by the Plea Agreement itself, signed by Mr. Parisi, which included a provision stating that he waived his right to appeal or collaterally attack his convictions or any sentence of 151-months or less. See Gov't Ex. 4 (Dkt. No. 19), at p. 16. The Government notes that the Court specifically addressed this paragraph of the plea agreement during Petitioner's plea proceeding, in which Petitioner acknowledged that he reviewed the terms of his plea agreement, and that he had signed the agreement freely and voluntarily. See Gov't Ex. 2 (Dkt. No. 19), at pp. 9, 24-25. The Government argues that pursuant to the agreement, because Mr. Parisi's sentence of 150-months was within the agreed upon range, he has waived any right to challenge the sentence, either directly or collaterally.

Waivers of appeal rights in a plea agreement have been consistently upheld as constitutionally sound in this circuit. Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); United States v. Djelevic, 161 F.3d 104, 106-107, (2d Cir. 1998); Frederick v. Lewisburg Correctional Facility, 308 F.3d 192, 195 (2d Cir. 2002). A defendant who pleads unconditionally

guilty while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996). However, a defendant who pleads guilty, as such, may attack on appeal the validity of the process by which the waiver was procured. United States v. Hernandez, 242 F.3d 110, 113-114 (2d Cir. 2002); Frederick, 308 F.3d at 195; Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999). Thus, Petitioner is not foreclosed from attacking his sentence based on a claim that either he received the ineffective assistance of counsel *in connection with the negotiation of the plea agreement*, or on other grounds that the plea was not voluntary and intelligent. Id. Ineffective assistance claims which challenge an attorney's assistance prior to the entry of an unconditional guilty plea, and unrelated to that plea, may not, however, be raised on appeal. Coffin, 76 F.3d at 497-498. The merits of Petitioner's particular claims are discussed below.

*E.  Ineffective Assistance of Counsel*

Ineffective assistance of counsel may render a guilty plea involuntary, but where defendant is represented by counsel during the plea process, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (Rehnquist, J.). For such a determination the Second Circuit has adopted the "Strickland Test" promulgated by the Supreme Court in 1984. See United States v. Arnold, 126 F.3d 82, 89 (2d Cir. 1997); Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995). The Strickland Test also applies to guilty pleas. Hill, 474 U.S. at 57.

The two-pronged Strickland Test requires Petitioner to establish (1) that the attorney's performance fell below an "objective standard of reasonableness", and (2) that there is a

reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984) (O'Connor, J.). For the first prong, counsel should be given a "strong presumption" of adequate assistance. Id. at 690. For the second prong, petitioner must prove *objectively* that were it not for counsel's failure, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 59.

Petitioner asserts several claims regarding his attorney's ineffective assistance in violation of the Sixth Amendment. While this Court is of the belief that each one would fail on the merits under the rigorous scrutiny of the Strickland Test, the only viable claim – which challenges the attorney's assistance directly related to the plea process, and thus survives a waiver in the plea agreement – is Mr. Parisi's assertion that his attorney provided ineffective assistance by coercing him into the plea agreement with promises that Petitioner's wife, Melodi Parisi, would receive a reduced sentence. However, this sole surviving claim of ineffective assistance of counsel is now rejected by the Court.

Petitioner's attorney negotiated a provision in the plea agreement which afforded Melodi Parisi the ability to avoid a minimum 10-year sentence. See Gov't Ex. 4, p. 11. Petitioner has acknowledged that he reviewed the terms of his plea agreement, and subsequently signed the agreement freely and voluntarily. Gov't Ex. 2 (Dkt. No. 19), at pp. 9, 25. Since the benefit bestowed on Melodi Parisi also indirectly benefits the Petitioner by virtue of the well being of their three minor children, it cannot be said that his attorney's recommendation in this respect falls outside of the broad scope of acceptable professional practices under the first prong of the Strickland Test. Nor does Petitioner somehow demonstrate that had he not been advised of this benefit he would not have pled guilty, and would instead have insisted on going to trial. Thus, the

presumption in favor of the attorney under the Strickland Test has not been overcome by Petitioner, and his claim alleging violations of his Sixth Amendment rights is denied.

*F.  Whether Petitioner's Guilty Plea was Otherwise Voluntary and Intelligent*

Mr. Parisi argues that his guilty plea should be vacated because it was not voluntary and intelligent.  This, too, goes to the validity of the process by which the plea has been procured, and thus the issue is not foreclosed by a waiver in the plea agreement.  See United States v. Hernandez, 242 F.3d 110 (2d Cir. 2001).  Specifically, Petitioner alleges that because the Government withheld exculpatory evidence, he did not have notice of the true nature of the charges, or a full understanding of the consequences of pleading guilty.  He further alleges that at the time of the plea agreement his mental alertness was impaired due to ingestion of Hydrocodone, a painkiller prescribed for back pain by his physician.  Finally, Mr. Parisi argues that he was again coerced into his plea with the promise of leniency toward his wife, and Petitioner claims that if that coercion does not constitute ineffective assistance of counsel (decided *supra*), then it does negate the voluntariness of his plea.

"[T]he standard for determining the validity of guilty pleas was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).  It is assumed that the defendant understands the charges against him and the consequences of pleading guilty if he is represented by counsel who explained them to him.  Panuccio v. Kelly, 927 F.2d 106, 110 (2d Cir. 1991).  A petitioner has the burden of establishing that his guilty plea was not voluntary and intelligent.  Harned v. Henderson, 588 F.2d 12, 22 (2d Cir. 1978).

Mr. Parisi first argues that his plea was not knowing and voluntary because the government withheld exculpatory evidence, and his attorney failed to address this issue. Namely, Petitioner alleges that the Government withheld information that it had illegally accessed his computer network, thus invalidating the search warrant that was used to seize his computer. Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (Dkt. No. 1), at pp. 1-2 & Ex. A. He claims that without such information his plea was not knowing and voluntary, and that his attorney should have addressed his claim. Id. at 2. To assert such a charge against the Government, Petitioner's claim must be based upon more than a mere assumption. However, this claim is supported by nothing more than that, with no convincing evidence. The claim is largely speculative and does not, as it is Petitioner's burden to do, establish that such exculpatory evidence either exists, or was withheld. Counsel's failure to obtain such information is not addressed here, as all ineffective assistance of counsel claims have been disposed of above.

Moreover, the Second Superceding Indictment of Petitioner, as well as his plea agreement, which he acknowledged that he had read and signed freely and voluntarily, see Gov't Ex. 2 (Dkt. No. 19), at pp. 9, 25, both clearly set forth the nature of the charges. Petitioner stipulated in his plea agreement that he understood the legal elements of the offenses. Thus, Mr. Parisi had notice of the true nature of the charges, and vacation of the guilty plea on this basis is denied.

The record also establishes that petitioner had knowledge of the consequences of pleading guilty. In addition to a written explanation in his plea agreement, see Gov't Ex. 4 (Dkt. No. 19), at pp. 2-3, 17, the consequences of pleading guilty were also explained to petitioner during his plea allocution. The Court specifically asked him whether he had discussed the consequences of

a plea with his attorney, and Petitioner replied that he had. See Gov't Ex. 2 (Dkt. No. 19), at p. 9. Petitioner's attorney confirmed this discussion, and stated that he also understood the consequences of his client's plea of guilty. In addition, the Government informed Petitioner at that same proceeding that following his plea, his imprisonment range was estimated to be 151-188 months, including any upward enhancements that the Court found to be warranted.[4] Id. at pp. 22-23. Petitioner was asked by the Court whether he understood the potential penalties, and if so, whether he still wished to plead guilty. Mr. Parisi answered in the affirmative on both questions, Id. at pp. 22-23, 26, and thus cannot readily prove that he did not understand the consequences of pleading guilty.

      Petitioner also asserts that his plea was not knowing and voluntary because at the time of the plea he was mentally impaired by the use of medication. While Petitioner has proven a medical prescription for Hydrocodone issued prior to the plea hearing, Petitioner's Ex. 4 (Dkt. No. 27), the record transcript of the plea hearing clearly trumps any indication that such prescription interfered with the voluntariness of his guilty plea on that day.

      Where a defendant indicates that he has taken medication or has a condition which requires medication, a district court must ensure that the defendant has the ability to understand the proceedings and enter a voluntary plea. United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988). The court did just this at Mr. Parisi's plea hearing, and Mr. Parisi specifically stated that he

---

[4] At this time Petitioner's final offense level was estimated by the Government to be 34, including several upward enhancements, as well as a downward departure for Petitioner's acceptance of responsibility, carrying a sentence range of 151-188 months. See Gov't Ex. 2 (Dkt. No. 19), at p. 22-23. Subsequently, at the formal sentencing hearing, the Court found Petitioner's base offense level to be 27, with upward enhancements and a downward departure, ultimately resulting in a final offense level of 33. This carried a sentence range of 135-168 months. See Gov't Ex. 3 (Dkt. No. 19), at pp. 9-10. The validity of Mr. Parisi's final sentence is discussed *infra*.

11

had not taken any pills that day, and affirmed to the Court that he was "aware" of what he was doing. Gov't Ex. 2 (Dkt. No. 19), at pp. 5-6. Furthermore, Petitioner did not raise this issue at sentencing or during the lengthy period of negotiations over his plea. Only within Mr. Parisi's current petition does the issue of this impairment now arise – part of an unsworn statement on his own behalf. This alone is not enough to satisfy the legal standard that his mental faculties were "so impaired" by the medication, during the entire period of plea negotiations, that he was incapable of making a voluntary and knowing decision. Sanders v. United States, 373 U.S. 1, 5-6, 19-20 (1963) (Brennan, J.). Dismissal of Mr. Parisi's plea on this ground is denied.

Finally, Petitioner claims that he was coerced into the plea agreement because he was promised that his wife would receive a more lenient sentence. As discussed above, it is true that Melodi Parisi was afforded a significant benefit by virtue of her husband's plea agreement. Gov't. Ex. 4 (Dkt. No. 19), at p.11. Pleas made in exchange for a promise, however, do not equate to a coerced, or involuntary plea. U.S. v. Marquez, 909 F.2d 738, 742 (2d Cir. 1990) (guilty plea not involuntary where government agreed to plea agreement for wife only if defendant pled guilty). This is an accepted practice, and since petitioner signed the plea agreement knowingly and voluntarily, he has not demonstrated that the plea was coerced on this basis.

Based on the record and the foregoing, Petitioner has failed to meet his burden in establishing that his plea was not voluntary and intelligent. Thus, his request that his plea agreement be vacated on that ground is denied.

*G.  Petitioner's Sentence Enhancements*

In the event that his plea of guilty is not entirely set aside, Petitioner asserts in the alternative that under the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), and its later clarification of Apprendi in Blakely v. Washington, 542 U.S. 296 (2004),  his sentence of 150 months incarceration should be vacated, and he should be re-sentenced to a lesser term of 51-63 months of incarceration.  For the reasons set forth below this request is denied.

In Apprendi, the Defendant fired several shots into the home of an African-American family and later stated that he did not want the family in his neighborhood because of their race. Apprendi pled guilty to second-degree possession of a fire arm for an unlawful purpose which, according to the statute, carried a maximum prison sentence of 10 years.  Following his guilty plea, the prosecutor moved to enhance the sentence based on the state's hate crime statute which provides for such an enhancement.  The issue of a sentence enhancement under the state law was never addressed prior to Defendant's guilty plea.  After finding by a preponderance of the evidence that the crime was racially motivated, the trial judge sentenced Apprendi to 12 years of incarceration. Apprendi, 530 U.S. at 470-472.

The Supreme Court reversed Apprendi's 12-year sentence holding that any fact that increases a penalty for a crime *beyond the prescribed statutory maximum*, must be submitted to a jury and found by them to have been proven beyond a reasonable doubt.  The Court made clear that nothing in its analysis suggests reversing the long standing use of discretion by trial judges in imposing a sentence.  Id. at 481, 497.  Furthermore, the Court did not invalidate the Federal Sentencing Guidelines, nor hold that it's rule applies to the Guidelines.  Apprendi, 530 U.S. at 497,

13

n. 21. The rule from the case, however, dictates that ultimately the sentence must fall within the statutory range prescribed by the legislature. Thus, in Apprendi, the Court expresses no reversal of the criminal sentence maximums already passed into law. Id. at 497 n.21. Therefore, that range still provides the governing principle for the Court. See United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002), *cert denied*, 540 U.S. 1167 (2004) (holding that movant's 20-year sentence, based on judge's finding that his offense involved over five kilograms of cocaine, did not violate Apprendi, since it did not exceed 30-year maximum otherwise applicable without regard to drug quantity.)

Pursuant to the United States Sentencing Commission Guidelines, Petitioner's specific violation warranted a base offense level of 27. See U.S. Sentencing Comm. Guidelines § 2G2.1. At Petitioner's sentencing hearing the Court found Mr. Parisi's final offense level to be 33. See Gov't Ex. 4 (Dkt. No. 19), at p. 9. This computation included four upward departures: one for exploitation of a minor, another because the alleged victim was a family member, a third because the offense involved more than one minor, and a fourth for obstruction of justice, bringing the adjusted offense level to 36. See Petitioner's Ex. A (Dkt. No. 14), at pp. 8-10. Finally, there were two downward adjustments for Petitioner's acceptance of responsibility, and by virtue of the fact that Petitioner entered a timely plea, which brought the final offense level down to 33 carrying a sentencing guideline range of 135-168 months. Id. See also Gov't Ex. 4 (Dkt. No. 19), at p. 9.

The Court sentenced Mr. Parisi to two concurrent sentences of 120 months, for Counts 2, 3, and 21, and 150 months for Counts 4 and 8.[5] This meant that Mr. Parisi's total term of incarceration was 150 months. The federal statutory range prescribed for Petitioner's specific

---

[5] The remaining counts were dropped in the plea agreement. Gov't Ex. 2 (Dkt. No. 19), at pp. 2-4.

offense is 15-30 years imprisonment.[6] 18 U.S.C. § 2251(e). Since the 150-month sentence imposed on Mr. Parisi falls within the statutory range prescribed for his offense, there is no Apprendi violation.

Petitioner argues further for a reduction in his sentence based on the Supreme Court's ruling in Blakely v. Washington, 542 U.S. 296 (2004), which expounded on the Apprendi rule and held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303. In other words, any sentence enhancement imposed by the trial judge must be supported by facts proven beyond a reasonable doubt to the jury or admitted by the defendant, regardless of whether the ultimate sentence exceeds the statutory maximum. The Court rendered this decision on June 24, 2004 – nearly five months after petitioner's sentencing.[7] Because Blakely does not apply retroactively to cases on collateral review, it cannot afford petitioner any relief. See Garcia v. United States, 04-cv-0465, 2004 WL 1752588, at *4-*6 (N.D.N.Y. Aug. 4, 2004) (McAvoy, S.D.J.); Blakely, 542 U.S. at 308 (O'Connor, J., dissenting) (indicating that the Court's ruling in Blakely is not retroactive on collateral review).

Moreover, assuming, *arguendo,* that the rule announced in Blakely was applicable to petitioner, it would still not afford him relief. Blakely expressly held that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 542 U.S. at 310; See also

---

[6] Mr. Parisi pled to violations of 18 U.S.C. §§ 1512(b)(2) & 2251(a), (c) & (d)(2) (2003).

[7] Mr. Parisi was sentenced on February 10, 2004. See Gov't Ex. 3 (Dkt. No. 19), at p. 1.

Apprendi, 530 U.S. at 488. Here, there are factual stipulations in the plea agreement as well as admissions by Petitioner himself that include facts supporting the upward adjustments in Petitioner's penalty. See Gov't Ex. 4 (Dkt. No. 19), at pp. 5-11; Gov't Ex. 2 (Dkt. No. 19), at pp. 14-20. Since Petitioner admitted these facts, there is no Blakely violation.

*H. Petitioner's Motion for Bail*

On July 7, 2005, Petitioner filed a motion for bail pending disposition of his 28 U.S.C. § 2255 petition. Petitioner's Motion for Bail Pending Disposition of 2255 (Dkt. No. 33). Because Petitioner has failed to demonstrate the merits of any grounds of his petition, and thus does not face the prospect of release, the motion for bail is moot, and is therefore denied.

### III. CONCLUSION

Based on the foregoing discussion, Petitioner has failed to demonstrate a sufficient basis for 28 U.S.C. § 2255 habeas corpus relief. As such, the petition for a writ of habeas corpus is denied. Accordingly, the related motion for bail is also denied.

Therefore, it is hereby

**ORDERED**, that Petitioner Parisi's petition for relief pursuant to 28 U.S.C. § 2255 (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED**, that Petitioner Parisi's motion for bail (Dkt. No. 33) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED: January 17, 2006
       Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge